FILED
IN OPEN COURT

OCT 1 9 2021

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:21-CR-224 (AJT) |
| v. | Count 1: 18 U.S.C. § 1001 (False Statements) |
| JAMES VICTOR PUNELLI, | Count 2: 18 U.S.C. § 641 (Theft of Government Funds) |
| *Defendant*. | |

**INFORMATION**

THE UNITED STATES ATTORNEY CHARGES THAT:

**Introductory Allegations**

1.     At all times relevant to this Criminal Information:

A.     JAMES VICTOR PUNELLI (hereinafter "PUNELLI" or "the defendant") was a resident of Leesburg, Virginia.

B.     PUNELLI was a fifty percent owner of Panthera Enterprises, LLC ("Panthera Enterprises"). Panthera Enterprises was a government contractor that provided tactical training services to various components of the federal government. Panthera Enterprises held 80% equity in Panthera Training Center LLC and 100% equity in Panthera Worldwide LLC. In 2019, Panthera Enterprises filed for Chapter 11 bankruptcy in the Northern District of West Virginia owing millions of dollars to creditors.

C.     PUNELLI was the sole member of Punelli Partners Limited Company ("Punelli Partners"), an entity PUNELLI formed in 2010 with the intention of providing consulting services. Punelli Partners conducted little or no legitimate business activity in 2019 and 2020.

D.     The Federal Emergency Management Agency ("FEMA") was a federal

agency within the United States Department of Homeland Security.  FEMA was responsible for the preparation, coordination, and relief efforts relating to disasters.

        E.      The Small Business Administration ("SBA") was an agency within the United States Government that provided assistance to small businesses, including administering and financing the Economic Injury Disaster Loan ("EIDL") program.

## Count 1
### (False Statements)

2.     From on or about March 26, 2020 to on or about May 11, 2020, in the Eastern District of Virginia and elsewhere, the defendant, JAMES VICTOR PUNELLI, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations to government officials in a matter within the jurisdiction of the executive branch of the Government of the United States, namely the acquisition by FEMA of personal protective equipment, specifically surgical masks, to combat the COVID-19 pandemic, in violation of Title 18, United States Code, Section 1001(a)(2)).

3.     In response to the COVID-19 pandemic, several departments and agencies of the United States Government, including FEMA, sought to acquire personal protective equipment (hereinafter "PPE"), including surgical masks manufactured by a multi-national conglomerate known as 3M. The acquisition of 3M masks was in furtherance of the duties and responsibilities of FEMA, and as such their acquisition was a matter within the jurisdiction of the executive branch of the United States Government. As set forth herein, PUNELLI knowingly and willfully made materially false, fictitious, and fraudulent statements to officials at FEMA regarding the acquisition of 3M masks in order to obtain a lucrative contract.

4.     On or about March 26, 2020, PUNELLI, through the company, Panthera Worldwide, sought to sell PPE to FEMA. Specifically, PUNELLI offered to sell 10 million surgical masks for a total of $56,300,000. In attempting to secure a contract with FEMA, PUNELLI sent an email to a FEMA procurement official which stated that Panthera Worldwide had "10 million (surgical masks) available now. And 1 million per week starting within 1 week." At the time of this email, PUNELLI knew that the statement was false because Panthera

Worldwide did not currently have any surgical masks available for sale and was not currently in a

position to provide 1 million masks per week.

5.      On or about March 29, 2020, FEMA officials asked PUNELLI for photographs of

the masks in his possession, including the 3M manufacturer's lot numbers.  On or about March 30,

2020, in an effort to secure the contract with FEMA, PUNELLI responded by falsely stating that

the masks were in Europe and that the lot numbers were hard to read.  PUNELLI further falsely

stated to FEMA officials that he was paying over 50 million dollars to acquire the masks and

reserve two wide-body jets to transport the masks from Europe to the United States.  At the time

these statements were made, PUNELLI knew the statements were false because Panthera

Worldwide did not have any 3M masks for distribution and he had not paid 50 million dollars to

obtain 10 million masks and secure two large jets for transportation.  At the time PUNELLI stated

that he had spent 50 million dollars, Panthera Enterprises was in the midst of bankruptcy

proceedings.

6.      Based in material part on PUNELLI's false representations, on or about March 31,

2020, FEMA awarded a company controlled by PUNELLI, Panthera Enterprises, a contract to

supply 10 million masks at a total cost of $55,465,000.  The contract called for the masks to be

delivered to FEMA on or about May 1, 2020, at which time the materials would be inspected and,

if approved, Panthera Worldwide, a company controlled by PUNELLI, would be paid.

7.      PUNELLI then attempted to acquire 10 million masks but he was unable to do so.

On or about April 29, 2020, PUNELLI sought to extend the date of delivery for 30 days.  In support

of his request for an extension, PUNELLI falsely stated to FEMA officials that the masks were

"now in the U.S." At the time this statement was made, PUNELLI knew the statement was false

because Panthera Worldwide did not have any masks, in the U.S. or anyplace else.  Based on

PUNELLI's materially false statement, FEMA agreed to extend the date of delivery from May 1, 2020 to May 11, 2020, in exchange for a 20-cent reduction in the price per mask.

8.      On May 11, 2020, Panthera Worldwide failed to deliver any masks to FEMA as required by the contract.  Thereafter, FEMA terminated the contract with Panthera Worldwide due to their failure to deliver and PUNELLI's repeated false statements.

(In violation of Title 18, United States Code, Section 1001(a)(2))

<u>**Count 2**</u>
**((Theft of Government Funds)**

9.      From on or about March 30, 2020 to on or about May 11, 2020, in the Eastern

District of Virginia and elsewhere, the defendant, JAMES VICTOR PUNELLI, knowingly and

willfully embezzled, stole, purloined, and converted to his use money in the amount of $141,000

of the United States or of a department or agency thereof, namely the SBA, in violation of Title

18, United States Code, Section 641.

### *The Economic Injury Disaster Loan Program*

10.      The EIDL program was an SBA initiative that provided low-interest financing to

small businesses, renters, and homeowners in regions affected by declared disasters, including the

COVID-19 pandemic.

11.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal

law enacted in or about March 2020 and designed to provide emergency financial assistance to the

millions of people who were suffering the economic effects caused by the COVID-19 pandemic.

The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small

businesses experiencing a temporary loss of revenue due to the COVID-19 pandemic.  In addition,

the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within

three days of applying for an EIDL loan.  The amount of the advance was determined by the

number of employees the applicant certified having.  The advances did not have to be repaid.  An

advance could be made before a loan was accepted or declined.

12.      In order to obtain an EIDL loan or EIDL advance, an authorized representative of

a  qualifying business was required to submit an application to the SBA and provide information

about its operations, such as the number of employees, gross revenues for the 12-month period

preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In

the case of EIDL loans for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge. The applicant was warned that any false statement to the SBA or any misapplication of the loan proceeds may result in criminal penalties.

13.     EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The SBA's computer servers which, among other things, sent and received wire communications concerning all EIDL applications, processing and funding, are located in the Eastern District of Virginia. The amount of the loan, if the application was approved, was determined based, in material part, on the information provided in the application about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL loan or EIDL advance were provided by the SBA and the United States Treasury. EIDL funds could be used to replace lost revenue as a result of the COVID-19 pandemic, such as payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. EIDL funds could not be used for, among other things, personal expenses and business expenses unrelated to the loss of revenue from the COVID-19 pandemic.

### The Punelli Partners EIDL Loan and EIDL Advance

14.     On or about March 30, 2020, PUNELLI applied for an EIDL loan with the SBA on behalf of Punelli Partners.

15.     In the loan application, digitally submitted by the defendant, PUNELLI knowingly falsely and fraudulently misrepresented material information to the SBA about Punelli Partners' operations. Specifically, PUNELLI falsely stated that his wife was the manager and one hundred percent owner of Punelli Partners, when PUNELLI then and there knew that he was the sole owner and member of Punelli Partners. PUNELLI also falsely stated that Punelli Partners had $287,167

of gross revenue for the twelve months prior to January 31, 2020, when PUNELLI then and there knew that Punelli Partners generated no revenue from business operations during that period. Finally, PUNELLI falsely claimed that Punelli Partners had two employees, when PUNELLI then and there knew that Punelli Partners had no employees.

16.     The SBA relied on the materially false statements made by PUNELLI in the loan application in determining Punelli Partners eligibility for an EIDL loan, eligibility for an EIDL advance, as well as the amount of the loan and advance to be paid to Punelli Partners by the SBA.

17.     On or about April 14, 2020, the SBA disbursed a $2,000 advance on the EIDL loan to Punelli Partners. On or about April 21, 2020, the SBA approved Punelli Partner's EIDL loan application and disbursed an additional $139,000 to Punelli Partners.     The total amount federal funds disbursed by the SBA from the U.S. Treasury to Punelli Partners based on PUNELLI's false and fraudulent application was $141,000.

18.     From on or about April 14, 2020 to on or about May 11, 2020, PUNELLI used the EIDL advance and loan proceeds for prohibited purposes, including for personal expenses and expenses associated with the pre-existing bankruptcy proceedings involving Panthera Enterprises.

(In violation of Title 18, United States Code 641)

## FORFEITURE NOTICE

Defendant JAMES VICTOR PUNELLI is hereby notified, pursuant to Federal Rule of Criminal Procedure 32.2(a), that upon conviction of the offenses set forth in Count 2 of this Criminal Information, he shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), his interest in any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of this offense.

The property subject to forfeiture under Count 2 includes, but is not limited to, a sum of money equal to at least $141,000. 00 in United States currency, representing the amount of proceeds obtained by PUNELLI as a result of the offense.

(All in accordance with Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(c); and Fed. R. Crim. P. 32.2.)

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: *William Fitzpatrick*
William Fitzpatrick
Assistant United States Attorney